UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARY ROWE,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No.  1:15-CV-1145

HON. RAY KENT

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for benefits under the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 9.)

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was fifty years old as of her amended alleged onset date.  (PageID.103, 182.)  She completed high school and was previously employed as an assembler and laborer.  (PageID.70–71.)  Plaintiff applied for widow's insurance benefits pursuant to Title II of the Social Security Act on June 20, 2012, alleging disability beginning October 6, 2008, due to fibromyalgia, chronic osteoarthritis pain, sleep apnea, arthritis throughout her body, knees needing replacement,

post traumatic stress nightmares, depression, and carpal tunnel syndrome. (PageID.103–104, 167–173.) Plaintiff's application was denied on March 25, 2013, after which time she requested a hearing before an administrative law judge (ALJ). (PageID.115–120.) On August 26, 2013, Plaintiff filed an application for supplemental security income (SSI) under Title XVI of the act, again alleging disability beginning October 6, 2008, due to the above listed maladies. (PageID.185–190.) On March 12, 2014, Plaintiff appeared with her counsel before ALJ James Prothro for an administrative hearing on both applications. At the hearing, testimony was heard from Plaintiff as well as a vocational expert (VE). (PageID.60–96.) Plaintiff also amended her alleged onset date to October 18, 2009. (PageID.182.) In a partially favorable written decision, dated May 9, 2014, the ALJ determined that Plaintiff was not disabled prior to August 26, 2013, but became disabled on that date and continued to be disabled through the date of the decision. (PageID.37–59.) On October 9, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.25–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*. 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (noting that the ALJ determines RFC at step four, at which point the claimant bears the burden of proof).

The ALJ determined that, prior to August 26, 2013, Plaintiff's claim failed at step five. The ALJ first determined that Plaintiff met the non-disability requirements for disabled widow's benefits through August 29, 2010, the date on which Plaintiff remarried, and which is termed the "controlling date." (PageID.44–45.) Then, beginning with the evaluation at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

onset date.[2]  (PageID.53.)  At step two, the ALJ found that since the alleged disability onset date through August 29, 2010, Plaintiff suffered from the following severe impairments: (1) obesity; (2) bilateral carpal tunnel syndrome; (3) epicondylitis; and (4) possible knee arthritis.  (PageID.45.)  The ALJ further determined, at step two, that beginning August 26, 2013, Plaintiff suffered from the severe impairments of: (1) right ankle fracture status post open reduction and internal fixation; (2) bilateral knee osteoarthritis; (3) right hip trochanteric bursitis; (4) fibromyalgia; and (5) obesity status post bariatric surgery.  (PageID.45.)  At step three, the ALJ found that at all relevant times, Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.47.)  At step four, the ALJ first determined that prior to August 26, 2013, Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: occasional climbing ramps, stairs, ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; frequent bilateral fingering; and she should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and hazards.

(PageID.47.)  Next, the ALJ determined that beginning August 26, 2013, Plaintiff retained the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: occasional climbing ramps, stairs, ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; and she should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, and hazards.

(PageID.50.)  Continuing with the fourth step, the ALJ found that at all relevant times, Plaintiff was

---

[2] Plaintiff correctly notes the ALJ's decision references her original onset date, rather than her amended onset date.  Plaintiff does not argue this is reversible error, however.  (PageID.587.)

5

unable to perform her past relevant work. (PageID.51.) At the fifth step, the ALJ determined that prior to August 26, 2013, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (PageID.51.) In making this finding, the ALJ questioned the VE on the matter. *See Richardson*, 735 F.2d at 964. The expert testified that Plaintiff could perform other work as an office clerk (11,000 regional and 385,000 national positions), usher (2,000 regional and 70,000 national positions), and interviewer (5,000 regional and 175,000 national positions). (PageID.91.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.53.) Beginning August 26, 2013, however, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform, based on application of Medical-Vocational Rule 201.14. (PageID.53.)

Accordingly, the ALJ concluded that Plaintiff was not disabled prior to August 26, 2013, but became disabled on that date and continued to be disabled through the date of decision, May 9, 2014. (PageID.53–54.)

## DISCUSSION

### 1. The ALJ's Evaluation of Plaintiff's RFC Prior to August 26, 2013.

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96–8p, 1996 WL 374184 at *1 (July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff

6

asserts that she is entitled to relief on the ground that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Plaintiff contends that the ALJ's decision is "legally deficient because he does not reference, much less discuss, any medical evidence that corresponds to August 26, 2013, or tends to show that Ms. Rowe's functional capacity deteriorated on this date." (PageID.590.)  The court discerns no error.

A brief discussion of the relevant dates is warranted at this point.  Plaintiff filed for SSI under Title XVI on August 26, 2013.  It is patent that SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Soc. Sec. Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, the month of August 2013 is the earliest date Plaintiff could receive SSI benefits.  Contrary to Plaintiff's assertion, therefore, the significance of this date is quite clear.  Moreover, as the ALJ found Plaintiff disabled beginning this date, Plaintiff can show no harmful error with regard to her SSI application.

Moving on, the parties also do not dispute that Plaintiff was not eligible for Title II benefits after she remarried in August 2010. Accordingly, the only time frame at issue here is between Plaintiff's alleged onset date and her controlling date. The gist of Plaintiff's argument is that because the ALJ did not cite any records near the date she filed for SSI, it is illogical for the ALJ to conclude she could perform light work on one day and then conclude she could only perform sedentary work the next.  But the Court sees no illogic here.  The ALJ discussed numerous records dated after her controlling date, but before the date she filed for SSI.  As recited by the ALJ, the evidence of record demonstrates a right ankle fracture, with postoperative changes and a decreased

7

range of motion, increased bilateral knee pain, and a diagnosis of fibromyalgia. (PageID.49–50.) Clearly the ALJ found the records dated after Plaintiff's controlling date warranted an RFC for only sedentary work. Plaintiff's claim that the ALJ's decision must be reversed because the ALJ found that her RFC for a limited range of light work ran through the date of her application for SSI is meritless. The only question remaining, then, is whether substantial evidence supports the ALJ's determination that Plaintiff was capable of performing a reduced range of light work for the period between her alleged onset date and her controlling date. The Court finds that there is.

    Prior to her amended alleged onset date, Plaintiff complained of pain in her arms and hands. (PageID.434.) She complained that "any activity that she does causes discomfort where her hands fall asleep and have pain." (PageID.434.) She was diagnosed with bilateral carpal tunnel syndrome, given new carpal tunnel splints, and an EMG was ordered. (PageID.434.) During this time she also complained of snoring and choking while she was asleep. (PageID.433.) A sleep study was ordered. In July 2009, she had a sleep clinic consultation where physical features of obstructive sleep apnea were demonstrated. (PageID.292.) In August 2009, two months prior to her amended onset date, she was seen for a "long-standing history" of difficulties with carpal tunnel. That said, she was using some braces which were "very helpful" although but they were getting worn out. It was also noted that she said "things are going fairly well for her for the most part." As long as she took her medicine, things were also "working fairly well for her hands." (PageID.430.) In September, she began using a CPAP machine for her sleep apnea, and was noted to be doing "quiet [sic] well with it." (PageID.429.)

    In November 2009, one month after her amended onset date, Plaintiff followed up with her care provider for pain in her hands as well as to talk about weight loss surgery. She

complained of pain in her hands, but denied any other difficulties or problems. Things were going "fairly well" other than her weight issues. On exam, she had a positive Tinel's and Phalen's test, but no muscle wasting was seen in either hand. It was noted she had a history of sleep apnea, osteoarthritis in both of her knees and hips, and obesity, though no complaints regarding these conditions were made. (PageID.428.) In December, she was seen for a physical exam prior to surgery for carpal tunnel release. She again stated she was "feeling well and doing well." She again denied other difficulties or problems. The physician remarked things were going fairly well other than the issues she complained of. (PageID.427.)

The same month she was also seen for a check-up regarding her sleep apnea. She stated she felt more refreshed and had no daytime sleepiness. She was advised to continue to work on weight reduction. (PageID.315.) In March 2010, she visited her care provider in order to get clearance for carpal tunnel surgery on her left hand. She reported "doing well" and that she had "done well" since carpal tunnel surgery on her right hand, though she stated she had not completely recovered as she still experienced numbness and loss of strength. A physical exam was normal other than a positive Tinel's sign on the left. (PageID.425.) In May 2010, she complained of some upper arm and neck pain. It was noted she had a history of osteoarthritis. On exam, she had intact muscle strength in her upper extremities. (PageID.422.) Later that month, however, this pain appears to have subsided as she only complained of a rash on her stomach, a lack of energy and difficulty losing weight, but had no other complaints or problems. (PageID.423.) On August 20, 2010, she complained of abdominal pain and pain in her chest after eating. It was noted she had a history of acid reflux, and that she had tried antacids but she still had breakthrough symptoms. An endoscopy was ordered. (PageID.418.) The next month, after her controlling date, she fractured her right ankle.

(PageID.559.) She had surgery on September 23, 2010. (PageID.563.) In October, she saw her care provider expressing concerns about the possibility of continued difficulties regarding her ankle fracture. It was noted she was "[w]ithout other complaints or problems at this point. States things are going well otherwise just the issue with the fracture." (PageID.416.)

At bottom, the ALJ's conclusion that Plaintiff was capable of performing a limited range of light work is supported by overwhelming evidence. On several occasions she remarked she was doing well, and denied any complaints other than those she was being treated for. Only rarely did this include knee pain. Indeed, there are little more than passing mentions regarding her osteoarthritis. Rather the main concerns appeared to be her obesity, sleep apnea, gastrointestinal distress, and carpal tunnel syndrome–all of which appeared to be under some level of control. Plaintiff has not demonstrated how any of these impairments imposed limitations greater than those accounted for in the ALJ's RFC determination. This claim of error is denied.

**2.     The ALJ's Evaluation of Dr. Paul Kevin Gerth's Opinion.**

On February 24, 2014, Dr. Paul Kevin Gerth provided a statement regarding Plaintiff's limitations in response to questioning by Plaintiff's attorney. He began by stating he was employed as an orthopedic surgeon and had first met Plaintiff in June 2012. He had diagnosed her with obesity and moderate arthritis in both of her knees. In support of this diagnosis, Dr. Gerth referenced x-rays that were taken on the date of his initial evaluation on June 13, 2012. (PageID.570.) He further stated that Plaintiff's complaints were consistent with what the x-rays demonstrated, and that her obesity made her symptoms worse and may have been part of the reason she developed osteoarthritis in the first place. (PageID.571.) Regarding her functional abilities Dr. Gerth was first asked how much Plaintiff would be able to lift and carry on an occasional basis. Dr.

Gerth responded that he "would estimate perhaps 15 pounds, based on the expectation that lifting considerable weight would make her knee pain worse." (PageID.571.)  When asked how long Plaintiff could be on her feet, standing or walking, throughout the workday, Dr. Gerth indicated that Plaintiff could only be on her feet for a total of two hours, and not consecutively. (PageID.572.) Dr. Gerth further opined Plaintiff could not kneel, squat, or sit in low chairs. (PageID.572.)  It also would be "likely" that Plaintiff would require unscheduled breaks during the workday. (PageID.572.) Furthermore, Dr. Gerth noted it would be "very preferable" for Plaintiff to be allowed a sit / stand option. (PageID.572.)  Finally, when asked whether it was "possible to determine if her symptoms have been at their current level of severity" going back to her amended alleged onset date, Dr. Gerth responded:

> That's a good question, somewhat difficult to answer.  When I saw her and recorded her history back in 2012, she told me that she's had knee pain off and on perhaps as early as the age of 14.  I did not specifically ask her how long she's been having pain at its current level; however, her x-rays do show significant arthritis.  Those radiographic findings do take some time to develop and so I think her contention that her symptoms have been at this level since 2009 is likely reasonable.

(PageID.573.)  The ALJ assigned the opinion, as it related to the time period between the alleged onset date through her controlling date only "little weight."  Plaintiff claims the ALJ erred in doing so.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the

11

opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77. The ALJ offered two rationales for discounting Dr. Gerth's opinion: (1) the doctor did not begin treating Plaintiff until almost two years after the controlling date in August 2010; and (2) Dr. Gerth's opinion is inconsistent with the objective clinical examinations between the alleged onset date and the controlling date. (PageID.49–50.) The Court finds the ALJ has provided good

reasons, supported by substantial evidence for doing so.

Dr. Gerth stated he initially met with Plaintiff on June 13, 2012. The ALJ correctly noted this was nearly two years after the controlling date of Plaintiff's remarriage.[3] (PageID.570.) The regulations expressly require an ALJ explain the weight to be given to a treating relationship, including the length of the relationship, frequency of examination, as well as the nature and extent of the relationship. 20 C.F.R. § 404.1527(c)(2). Here, there was a substantial gap of almost two years between the date Dr. Gerth began treating Plaintiff for her osteoarthritis and her controlling date. It was not in error for the ALJ to discount the opinion based on this fact. Plaintiff does not disagree, but argues instead that if the ALJ discounted Dr. Gerth's opinion of Plaintiff's condition in 2009 based on the fact that he did not examine her until 2012, then he could not give greater weight to the opinion of the state agency consultant, Dr. Shahida Mohiuddin, who did not examine Plaintiff at all and also had offered an opinion dated well after Plaintiff's controlling date. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12-cv-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, contrary to Dr. Gerth who expressly stated his opinion was based off of x-rays taken in 2012 and his subsequent

---

[3] The Court notes that Dr. Gerth may also have performed the surgery on Plaintiff's right ankle in September of 2010, only one month after Plaintiff's controlling date. (PageID.559–563.) Accordingly, it appears that Dr. Gerth's recollection of the date he first treated Plaintiff was incorrect. Neither party addresses this issue, but even if the Court were to consider this inconsistency, the Court finds no reversible error. First, there are no further records from Dr. Gerth between Plaintiff's surgery and June 13, 2012. Second, as demonstrated above, Dr. Gerth's opinion was based on his evaluation of Plaintiff's arthritis in her knees, not her ankle, and it is clear Dr. Gerth first evaluated Plaintiff for this condition in 2012. Third, as discussed below, the ALJ's conclusion that the opinion is inconsistent with the records from before the controlling date is also supported by substantial evidence. Accordingly, the Court sees no reversible error here.

treatment, Dr. Mohiuddin's opinion was based on treatment notes during the relevant time period, including Plaintiff's reports of improvement after carpal tunnel surgery. (PageID.111.) The Court finds no error here.

Finally, the ALJ found that Dr. Gerth's opinion was not consistent with Plaintiff's examinations between her alleged onset date and the controlling date (while he found that Dr. Mohiuddin's opinions were consistent with those examinations.) As the above discussion demonstrates, this conclusion is supported by substantial evidence. Plaintiff's sleep apnea appeared to be well controlled with the use of a CPAP machine, and while she complained of arm and hand pain, she generally reported she was doing well, even before surgery for her carpal tunnel syndrome. While it was true it was noted she had a history of osteoarthritis few, if any, treatment notes contain any complaints regarding this condition, and still less mention any treatment. It was only after her controlling date when Plaintiff began consistently complaining regarding her osteoarthritis and received treatment to treat this pain. Indeed, in his first treatment note from June 2012, Dr. Gerth noted that while Plaintiff complained of knee pain for as long as she could remember, she noted the pain was worse since the previous Christmas while participating in exercise to lose weight. (PageID.351.) Therefore, while Plaintiff's efforts to lose weight are commendable, Dr. Gerth's treatment notes do not support his opinion that Plaintiff's limitations in 2012 were present prior to the controlling date.

In sum, the Court finds the ALJ has provided good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Gerth's opinion. This claim of error is denied.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.


Dated:  March 16, 2017         /s/ Ray Kent
                               RAY KENT
                               United States Magistrate Judge